BROWN BROTHERS & CO. *vs.* THE WILLIAM CLARK CO.

PROVIDENCE—APRIL 4, 1900.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Principal and Agent. Estoppel. Election.*

X., a dealer in cotton, not being in funds, and desirous of purchasing certain cotton in Egypt, applied to the plaintiffs, who were bankers, for credit. He deposited a certain sum with the plaintiffs as a guarantee fund, and the plaintiffs furnished him a letter of credit for the required amount, the terms of which letter his vendor accepted and sold X. the cotton, drawing on the plaintiffs' nearest correspondent at 90 days with bill of lading attached, and shipped the cotton to the plaintiffs. The draft was accepted and paid, and the amount collected of the plaintiffs. X. was to sell the cotton and turn over the sale notes to the plaintiffs, and the proceeds of the cotton were to be paid to the plaintiffs. X. sold half of this lot to the defendant, the defendant and X. signing the sale note in duplicate, and X. sent his copy to the plaintiffs. When the contract between X. and the defendant was made the cotton had not arrived, but the bill of lading was in the plaintiffs' hands as collateral. The bill of lading was turned over by the plaintiffs' to K. to make entry of the cotton at the custom house, and K. attended to the forwarding of the cotton to the defendant.

The sale note was as follows : "Sold to C. [the defendant] 150 bales Egyptian cotton . . . Amount of my invoice for the cotton to be paid B. [the plaintiffs] . . . to my account thirty days after the arrival of the cotton . . ." It was signed by X. and the defendant.

Prior to the bill of sale time for payment, X., by arrangement with the defendant, drew on them for the price, deducting discount. The draft was signed by X. and indorsed by him, it being payable to his order. The defendant paid the draft. The arrangement between the plaintiffs and X., as well as other similar arrangements as to other cotton sold by X. to the defendant, was unknown to the defendant, who believed that X. owned the cotton. On other occasions, with similar sale notes, X. had drawn on the defendant and it had not been questioned.

After demand made by the plaintiffs upon the defendant for payment, the latter caused the arrest of X. at its suit brought to recover the amount paid to take up his draft, and afterwards discontinued the suit. At the time of the bringing of this suit the defendant was ignorant of a trust receipt given the plaintiffs by X. permitting X. to sell said cotton for the plaintiffs' account, the proceeds to be applied to the indebtedness of X. The plaintiffs brought suit to recover from defendant the price of the cotton :—

*Held,* that upon the facts stated X. was the agent of the plaintiffs, and the plaintiffs could not recover.

*Held,* further, that at the time of the action brought by the defendant against X., the defendant not being advised of all the facts, such suit did not

operate as a bar, election, or estoppel to prevent the defendant resisting the plaintiffs' action in the case at bar.

Assumpsit.   The case was tried before Mr. Justice Rogers, sitting without a jury.   Heard on petition of plaintiffs for a new trial.   New trial denied.

Per Curiam.   We find no error in the decision of Mr. Justice Rogers, and we adopt his opinion as the opinion of the court.

Judgment for the defendant, on the decision, for costs.

## Decision.

Rogers, J.   This is an action of assumpsit to recover the sum of $13,999.16 alleged to be due from the defendant to the plaintiffs for 150 bales of cotton sold to the defendant. The testimony disclosed the following facts :   The plaintiffs are bankers, or engaged in prosecuting certain branches of the banking business, with a branch office in Boston, Mass., and with a corresponding firm, Brown, Shipley & Co., in London, England.   The defendant is a thread manufacturing corporation, with a mill at Westerly, in this State, and uses more or less Egyptian cotton in the prosecution of its business.   One F. Von Salomon was located in Providence in the spring of 1896 and for several years prior thereto, and dealt in long-staple cotton.   In March, 1896, Von Salomon desired to purchase 300 bales of cotton from G. Frauger & Co., of Alexandria, Egypt, and, not being in funds, applied to the plaintiffs' Boston branch for credit.   He had obtained credit from the plaintiffs several times before in purchasing Egyptian cotton.   The following arrangement was made by Von Salomon and the plaintiffs as to the 300 bales aforesaid. Von Salomon deposited with the plaintiffs $2,000 as a guarantee fund, and the plaintiffs furnished him with a letter of credit for the required amount, the terms of which letter G. Frauger & Co. accepted, and accordingly sold the 300 bales, drawing on Brown, Shipley & Co. (the plaintiffs' nearest correspondent) at 90 days, with bill of lading attached, and shipped the cotton to the plaintiffs at Boston.   Brown, Ship-

ley & Co. accepted and paid the draft, collecting of the plaintiffs, of course, the amount paid by them. Von Salomon was to sell the cotton and turn over the sale notes to the plaintiffs, and the proceeds of the cotton thus sold were to be paid to the plaintiffs, and thus the plaintiffs would be re-imbursed for their advances. March 25, 1896, Von Salomon sold 150 bales of this lot to the defendant, the defendant as well as Von Salomon signing the sale note in duplicate, each party keeping a copy, and Von Salomon sent his copy to the plaintiffs.

When the contract between Von Salomon and the defendant for the 150 bales was made, the cotton had not arrived in Boston, but the bill of lading was in the plaintiffs' hands as collateral for their advances, and it was in their possession two or three weeks before the cotton arrived. The bill of lading was turned over by the plaintiffs to H. N. Proctor & Co., of Boston, forwarders, to make entry of the cotton at the custom-house, and who attended to forwarding the 150 bales to the defendant at Westerly. The sale note or contract of the 150 bales was a printed form with the blanks properly filled. It bore F. Von Salomon's letter-heading, and, in smaller letters under it, the name of G. Frauger & Co., Alexandria, Egypt, and then it proceeded in this wise :

"PROVIDENCE, R. I., March 25, 1896.

Sold to the William Clark Co., Westerly, R. I., 150 bales (say one hundred and fifty bales) Egyptian cotton standard type 'Sapho' at 13c per lb. (say thirteen cents per pound) net weight, F. O. B. the cars, Boston. Shipment due in Boston next week. Loss in weight not to exceed 5 lbs. per bale. Seller to cover cotton by insurance for the benefit of himself until it arrives at Westerly, R. I. Amount of my invoice for the cotton to be paid Messrs. Brown Brothers & Co., Boston, Mass., in Boston funds to my account thirty days after arrival of the cotton at Westerly, R. I.

(Signed)    F. VON SALOMON.

THE WILLIAM CLARK CO.,

WM. CLARK, Jr., Gen'l Man'g."

The cotton arrived in Boston about March 31, 1896, and was forwarded at once to the defendant at Westerly, arriving there about April 5, 1896 ; and payment would be due, according to the terms of the sale note, thirty days thereafter, or early in May.    Instead of waiting for the bill of sale time for payment to mature, Von Salomon, by arrangement with the defendant, drew on the defendant on demand for the net, after deducting an allowance for shortage in weight and discount for interest for the time before the contract maturity.    The draft thus drawn on the defendant was signed by F. Von Salomon, and it was also indorsed by him, as it was payable to his order at the Washington National Bank, Westerly, R. I.    The defendant paid it by check, and supposed the transaction was closed.

All this arrangement between Von Salomon and the plaintiffs, as to this particular lot of cotton, as well as all similar arrangements as to other cotton sold by Von Salomon to the defendant, was entirely unknown to the defendant, who believed that Von Salomon owned the cotton and had good right to sell it on such terms as he saw fit, and to alter the time and place of payment as he and the defendant might agree.    On several occasions before this, with sale notes exactly like this, Von Salomon had drawn on the defendant in the same way, and it had never been questioned, nor had it evoked any notice or comment from anybody.    What Von Salomon did with the defendant's checks, or the money obtained on them, the defendant did not know and supposed it had no reason to care.

The plaintiffs' Boston manager, who had sole charge of this business on the plaintiffs' part, swore that "he never requested the Wm. Clark Co. to pay us [*i. e.* the plaintiffs]. The contracts did not come directly to us from the Wm. Clark Co., but from Von Salomon.    We have received the Wm. Clark Co.'s checks for cotton at least once.    Can't say how they were indorsed.    We held these contracts ; never told the Wm. Clark Co. we held them.    Have all been paid except the one in question, never paid to us direct."

About six weeks after the 150 bales had been paid for on Von Salomon's draft, and about a month after the contract maturity of the sale, to wit, June 3, 1896, the plaintiffs wrote the defendant to inquire why payment had not been made to them as per the terms of the sale note. The next day the defendant replied that it had paid for the cotton March 18th (*sic* but an error for April 18th), " Mr. Von Salomon having made a sight draft on us through our local bank." June 10, 1896, the plaintiffs made demand by letter for a settlement for the 150 bales (in the words of the letter), "imported under our letter of credit and delivered to you by virtue of your contract of the 25th March payable to us and in our hands. Mr. Von Salomon's explanations of the transactions are not satisfactory to us, and we now ask you for a settlement as per contract referred to." Some other correspondence passed between the plaintiffs and the defendant, but the defendant has never paid nor agreed to pay the amount otherwise than by paying Von Salomon's draft already referred to. June 17, 1896, the defendant caused Von Salomon to be arrested at its suit brought to recover the amount paid to take up his draft of April 18, 1896, and afterwards, to wit, on July 18, 1896, it discontinued said suit.

At the time of the defendant's bringing said suit against Von Salomon it did not know of the existence of a trust receipt given by said Von Salomon to the plaintiffs March 31, 1896, and accepted by the said plaintiffs, said trust receipt being in these words, viz.: " Received from Brown Brothers & Co. the following goods' and merchandise, their property, specified in the bill of lading per Fabian, dated Alexandria, Feb. 25, '96, marked and numbered as follows : Sapho 601/900— 300 bales—Three hundred bales of steam pressed cotton.

(Signed)    H. N. PROCTOR & Co.

per R. N. RITCHIE,

( I )

and, in consideration thereof, (we) hereby agree to hold said goods in trust for them, and as their property, with liberty

to sell the same for their account, and further agree, in case of sale, to hand the proceeds to them to apply against the acceptance of Brown, Shipley & Co., on (——) account, under the (my) (our) terms of Letter of Credit No. N. 177 issued for (——) ac- (my) (our) count and for the payment of any other indebtedness of (——) to Brown, Shipley & Co., or Brown Brothers & Co. (mine) (ours)

Brown Brothers & Co. may at any time cancel this trust and take possession of said goods, or of the proceeds of such of the same as may then have been sold, wherever the said goods or proceeds may then be found; and in the event of any suspension, or failure, or assignment for benefit of cred- itors, on (——) part, or of the non-fulfillment of any obliga- (my) (our) tion, or of the non-payment at maturity of any acceptance made by (—) under said credit or under any other credit (me) (us) issued by Brown Brothers & Co., or Brown, Shipley & Co. on (——) account or of any indebtedness on (——) part to either (my) (my) (our) (our) of them, all obligations, acceptances and liabilities whatso- ever shall thereupon (with or without notice) mature and become due and payable.   The said goods while in (——) hands (my) (our) shall be fully insured against loss by fire.

Dated Boston, Mch. 31, 1896.

F. VON SALOMON.

5838–14–8."

This trust receipt was a printed form, with the blanks filled in writing to make it applicable to the property in question, date, &c., the form being furnished by the plaintiffs, and the property was actually received from the plaintiffs' forwarders after getting through the custom-house, and the receipt was then delivered by said H. N. Proctor & Co. to the plaintiffs, according to the plaintiffs' directions.

At the time of the defendant's bringing its action against Von Salomon, the defendant also did not know of the existence of the plaintiffs' letters to Von Salomon of June 2 and of June 18, 1896. In said letter of June 2, 1896, the plaintiffs wrote : " We estimate we shall be short some $500 when we receive Clark Co.'s check. Please attend to this remittance at once, and advise us why the delay on the part of Wm. Clark Co."

The plaintiffs' said letter of June 18, 1896, spoke of not making any new arrangements with Von Salomon until the old ones had been satisfactorily settled.

(1)      Under this state of facts the court is of the opinion that the plaintiffs are not entitled to recover. The whole course of dealings between the plaintiffs, Von Salomon, and the defendant clearly indicates that Von Salomon was authorized by the plaintiffs to do all that he did, except to convert to his own use the amount received from the defendant. The evidence nowhere raises a suspicion in the mind of the court that the defendant, when it paid Von Salomon, had any knowledge that Von Salomon was either not entitled to receive the money or was going to make any improper use of the money after receiving it. There was nothing about the sale note to put the defendant upon inquiry as to whether Von Salomon was an agent merely, the designation of Brown Brothers & Co. as the party to whom payments of maturing contracts were to be remitted not being sufficient to serve as notice to the defendant that the plaintiffs had any rights there, or were in any different position from any other banking firm or institution where one makes or has made deposits to his own credit. The plaintiffs admit that Von Salomon's

copy of the original contract with the defendant was sent them, as such contracts had always been before, though the defendant did not know it; so the plaintiffs had opportunity and could easily have notified the defendant of their rights had they not been willing to trust Von Salomon's honesty. Their course of dealing, their letter to Von Salomon of June 2, 1896, and, above all, the trust receipt from Von Salomon, in my opinion constituted Von Salomon their agent to sell said cotton and receive the money; and if Von Salomon, after receiving the money, converted it to his own use instead of paying it over to the plaintiffs, it is the plaintiffs' loss and not the defendant's. The defendant's bringing an action against Von Salomon, under the pressure of the plaintiffs' claim against it that it had been buying cotton that Von Salomon had dealt with fraudulently, does not, in my opinion, operate as a bar, an election, or an estoppel in any way to prevent the defendant's resisting the plaintiffs' action in this case, for the defendant in bringing its action was not advised of all the facts, nor of the most important one of all, to wit, the existence of the trust receipt.

The decision of the court is that the plaintiffs are not entitled to recover from the defendant in this action, and that the defendant is entitled to judgment against the plaintiffs for its costs.